LAWRENCE KILROY, Respondent, *v.* THE PRESIDENT, MANAGERS AND COMPANY OF THE DELAWARE AND HUDSON CANAL COMPANY, Appellant.

Carriers by water are bound to deliver their cargoes upon the wharf after giving due notice to the consignee, unless the bill of lading contains special agreements, or a known and established usage to the contrary exists.

By a bill of lading for a cargo of coal transported on one of defendant's boats to New York, it was provided that the coal was to be delivered "alongside." It is the custom of that port and of defendant's boats for the captain of the boat to manage the guy-rope of the hoisting apparatus during the unloading of cargoes of coal, and to have the general superintendence and direction of the work. While the cargo was being unloaded the captain of the boat put the guy-rope in the charge of a boy, who, through negligence, gave the signal prematurely to hoist, obedience to which caused a portion of the hoisting apparatus to fall; it struck and injured the plaintiff, an employe of the stevedore, at work in the boat filling the coal buckets. In an action to recover the damages, *held*, that while the general rule was cut down and limited by the bill of lading and the custom, so that the duty and expense of unloading was devolved upon the consignees, the duty of managing and controlling the guy-rope was upon the captain; that in performing this duty, or entrusting it to another, he was to be deemed the servant and engaged in the business of the boat owner, not that of the stevedore; that he and the plaintiff were not co-servants; and that defendant was liable.

*Murray* v. *Currie* (L. R. [6 C. P.] 24); *The Harold* (21 Fed. Rep. 428), distinguished.

Reported below, 21 J. & S. 138.

(Argued February 28, 1890; decided April 15, 1890.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made

June 20, 1888, which affirmed a judgment in favor of plaintiff entered upon a verdict, and affirmed an order denying a motion for a new trial.

This action was brought to recover damages for injuries alleged to have been sustained by plaintiff in unloading a cargo of coal from one of defendant's canal boats.

It appeared that the coal had been sold and was consigned to Hirsch Bros.; it was being unloaded by a stevedore employed by that firm at a wharf in New York city.

The captain of the boat, who had been managing the guy-rope, put a boy temporarily in charge of it. The latter, prematurely and negligently, gave a signal to the hoist boy to go ahead before the coal bucket was attached to the chain of the hoisting machine, the hoist horse started forward, the hook at the end of the chain caught in a heavy beam across the opening of the hold, the gaff of the elevator fell, and one of the tackle-blocks fell into the hold and struck plaintiff, an employe of the stevedore, at work in the hold of the boat filling the coal buckets, injuring him.

Further facts are stated in the opinion.

*Matthew Hale* for appellant. The court erred in denying a motion for a nonsuit, and also in denying the request to direct a verdict for the defendant. The captain, in assisting the stevedore to unload the boat, was not the servant of defendant. (*Murray* v. *Currie*, L. R. [6 C. P.] 24; *Murphy* v. *Caralli*, 3 H. & C. 462; *Rourke* v. *W. M. C. Co.*, L. R. [1 C. P.] 556; 2 id. 205; *The Harold*, 21 Fed. Rep. 428; *Jewell* v. *G. T. R. R. Co.*, 55 N. H. 84.) The plaintiff and Logan were fellow-servants engaged in the same general employment, and defendant was not liable to the former for the negligence of Logan. (*Johnson* v. *City of Boston*, 118 Mass. 114; *Ewan* v. *Lippincott*, 47 N. J. L. 192; *Wiggett* v. *Fox*, 11 Exch. 832; *The Harold*, 21 Fed. Rep. 428.)

*Louis F. Post* for respondent. The motion to dismiss the complaint was properly denied. (*Payne* v. *Co.*, 83 N. Y. 572;

*Wolf keil* v. *Co.*, 38 id. 49 ; *Weber* v. *Co.*, 58 id. 451 ; *Stackus* v. *Co.*, 79 id. 464 ; *Rooney* v. *Compagnie*, 12 Wkly. Dig. 465 ; *Derrenbacher* v. *R. R. Co.*, 10 id. 347 ; *Co.* v. *Mares*, 123 U. S. 710 ; *Co.* v. *Crandall*, 120 id. 527.) The objections to proof of custom as to who hires the person who manages the guy-rope, and as to who gives the orders to the hoist boy, are general, and, therefore, unavailable. (*Levin* v. *Russell*, 42 N. Y. 251 ; Story on Agency, §§ 60, 77, 96, 106.) It was material and competent for the court to ask the defendant's witness as to defendant's custom with reference to holding the guy-rope. (2 Greenl. on Ev. § 64.) The medical expert's opinion, based on a personal examination of the plaintiff, was competent. (*Levin* v. *Russell*, 42 N. Y. 251 ; *Bergman* v. *Jones*, 94 id. 51 ; *Curtis* v. *Gano*, 26 id. 426 ; *Ayres* v. *Water Comrs.*, 22 Hun, 297 ; *People* v. *Lake*, 12 N. Y. 358 ; *Reynolds* v. *Robinson*, 64 id. 589 ; *Fort* v. *Brown*, 46 Barb. 366.) The exclusion of testimony as to the construction of the stevedore's derrick was proper. (*Ferguson* v. *Hubbell*, 97 N. Y. 507 ; *Case* v. *Perew*, 46 Hun, 57 ; *Schwander* v. *Birge*, Id. 66 ; *Marcly* v. *Shultz*, 29 N. Y. 346.) A remark of the court is no ground for reversal unless made in the presence and hearing of the jury and calculated to improperly influence the jury ; and in such case the question cannot be raised by exception. (*Daly* v. *Byrne*, 77 N. Y. 182.) The testimony of Logan relating to plaintiff's case in chief was taken in the order of rebuttal, against defendant's objection. The admission in rebuttal of evidence in chief is discretionary. (*Co.* v. *Jameson*, 48 Ill. 281.) The motion to direct a verdict was properly denied. (*Cook* v. *Co.*, 1 Abb. Ct. App. Dec. 432.) Requests to charge which determined questions of fact were properly refused. (*Manning* v. *Adams*, 32 Wkly. Rep. 430 ; *Lee* v. *Co.*, 98 N. Y. 115.) The requests to charge which denied the liability of the defendant for the negligence of a person employed in its service by its agent and with its authority were properly denied. (*Gleason* v. *Amsdell*, 11 Wkly. Dig. 159 ; *Althorf* v. *Wolfe*, 22 N. Y. 355 ; *Suydam* v. *Nevin*, 8 Barb. 358.) Masters are answerable not only for

the negligence of a servant acting within the scope of his employment, but also for the negligence of one whom the servant employs by authority of the master. (*Duncan* v. *Findlater*, 6 Cl. & Fin. 894, 910 ; Wood's M. & S. § 308 ; S. & R. on Neg. [4th ed.] §§ 157, 160, 161, 162 ; *Cosgrove* v. *Ogden*, 49 N. Y. 255 ; *Weed* v. *Co.*, 17 id. 362 ; *Ochsenbein* v. *Shapley*, 85 id. 214 ; *Quinn* v. *Power*, 87 id. 535 ; *Round* v. *R. R. Co.*, 64 id. 129 ; *Powell* v. *Deveney*, 57 Mass. 301 ; *Gleason* v. *Amsdell*, 11 Wkly. Dig. 159 ; *Althorf* v. *Wolfe*, 22 N. Y. 355 ; *Booth* v. *Mister*, 7 C. & P. 66 ; *Carson* v. *Leathers*, 57 Miss. 650 ; *Gerlach* v. *Edelmeyer*, 15 J. & S. 292 ; 88 N. Y. 645 ; *Michael* v. *Stanton*, 3 Hun, 462 ; *Coyle* v. *Pierrepont*, 37 id. 379 ; *Fenton* v. *P. Co.*, 8 Ad. & El. 835 ; *Dalyell* v. *Tyler*, 1 El., Bl. & El. 899 ; *Crocher* v. *Colverl*, 8 Ind. 127.) The trial judge correctly stated : " Whether or not Mr. O'Brien (the stevedore) was negligent is not a material issue in this case. The plaintiff can recover only if the defendant was negligent. If both were negligent, and the defendant's negligence was the cause of the injury, then the plaintiff may recover." (*Creed* v. *Hartman*, 29 N. Y. 591 ; *Roberts* v. *Johnson*, 58 id. 613 ; *Metcalf* v. *Baker*, 11 Abb. Pr. [N. S.] 431 ; *Colgrove* v. *R. R. Co.*, 6 Duer, 382 ; 20 N. Y. 492 ; *Chapman* v. *Co.*, 19 id. 341 ; *Barrett* v. *Co.*, 45 id. 628 ; *Johnson* v. *Co.*, 31 Minn. 57 ; *Lake* v. *Milliken*, 62 Me. 240 ; *Chipman* v. *Palmer*, 77 N. Y. 51, 54 ; *Smith* v. *Dobson*, 3 M. & G. 59 ; S. & R. on Neg. [4th ed.] §§ 31, 32, 66 ; *McMahon* v. *Davidson*, 12 Minn. 357 ; *Hunt* v. *R. R. Co.*, 14 Mo. App. 160 ; *Webster* v. *R. R. Co.*, 38 N. Y. 260 ; *Slater* v. *Mersereau*, 64 id. 138 ; *Lowery* v. *M., etc., Co.*, 99 id. 158 ; *Eaton* v. *Boston*, 11 Allen, 500 ; *Stevens* v. *Armstrong*, 6 N. Y. 435.) Employment in the same general business does not make the employes fellow servants ; the employment must be under the same master, as well as in the same general business. (S. & R. on Neg. [4th ed.] § 225 ; Bevens on Neg. 391–405 ; *Smith* v. *R. R. Co.*, 19 N. Y. 132.) On each of the vital points raised by the defense, there was an issue of fact which was properly submitted to the jury, and

the verdict is conclusive. (*Barrett* v. *R. R. Co.*, 45 N. Y. 628, 632; *Hamilton* v. *R. R. Co.*, 8 J. & S. 376; *Scott* v. *Co.*, 3 H. & C. 596; *Beckwith* v. *R. R. Co.*, 64 Barb. 299; *Jenks* v. *Van Brunt*, 6 Civ. Pro. Rep. 158; *Band* v. *Mayor, etc.*, 96 N. Y. 567; *Cram* v. *Baudouin*, 55 id. 256; *Sherwood* v. *Hunsen*, 94 id. 626.)

FINCH, J. The negligence which occasioned the injury to plaintiff was that of a boy temporarily put in charge of the guy-rope by the captain of the boat, who thereby became chargeable with the carelessness of his substitute. But, whether the captain, in managing the guy, and entrusting it to Logan, is to be deemed the servant, and engaged in the business of the boat owner, by whom he was employed and paid, or of the stevedore, who was unloading the cargo under an employment by its purchaser, remains as the important question to be decided.

The facts, bearing upon the inquiry, are substantially undisputed. The cargo of coal had been sold to Ward & Olyphant by the defendant company, and by the purchasers to Hirsch Bros., to whom they gave a bill of lading, specifying that the coal was to be delivered "alongside." All parties understood that the boat was to be unloaded at the expense of Hirsch Bros., and by a stevedore in their employ. The proof is very clear that in every such instance it is the custom of the port and of the defendant company's boats for the captain to handle and manage the guy-rope during the process of hoisting and transferring the coal. The origin of this custom is not directly shown or explained by the evidence, and we are to determine its force and effect without such aid. It is the general rule that carriers by water, transporting property from port to port, are bound to deliver the cargo upon the wharf, giving due notice to the consignee. Of course, the rule is very frequently modified by special agreements in the bills of lading, or the known and established usages of different ports, and it may very well be that some difference exists, as has occasionally been intimated, between the rules applicable to sea-going

vessels and those engaged in the internal commerce of our lakes and rivers. But the general rule, quite as broadly as I have stated it, has been applied in our courts where the shipment was on the Hudson river for delivery at Albany. (*Ostrander* v. *Brown*, 15 Johns. 39.) In the absence, therefore, of any modifying custom or stipulation, it would have been the defendant's duty to have lifted the coal from the boat and placed it upon the wharf, and whatever the captain did in the performance of that duty after having given notice to the consignee of the arrival of the boat, would have been as the servant of the defendant company, and in the performance of its agreement as carrier. But such general duty was affected by the stipulation in the agreement of sale to Hirsch Bros. to deliver "alongside," and by the custom established, which imposed upon the captain the duty of managing the guy-rope. The action of the parties, to some extent, indicates the construction to be put upon these two facts. The delivery "alongside" imposed upon the consignee the duty and expense of unloading the coal. Hirsch Bros. understood and acknowledged that to be their duty by employing the stevedore to do that work, and he signified his consciousness of the character of the service required by putting his own servants into the boat to fill the coal buckets and to hoist them to the wharf level and swing them to the point of deposit. But he employed nobody to manage and control the guy-rope. That duty custom put upon the captain, and the stevedore simply left him to perform it. He says, in his testimony, not only that he never hired a man for that service, but that he had nothing to do with the coal "only when it comes over the string-piece to take charge of it." That, however, is not a fact, but an opinion, and certainly incorrect, for he put his men in the hold to fill the bucket, and lifted it with his own horse, managed by his own servant. But beyond such opinion he adds certain facts as incident to and characterizing the custom. He says "if the captain tells the hoisting boy to go ahead with the horse, why he goes ahead; if I am there and tell him to go ahead, he won't go until the captain tells him."

This feature of the custom indicates that while the consignee pays for the unloading and sets his own servants at the work, yet the process is carried on under the general superintendence and direction of the captain. The usage which reserves to him the control of the guy-rope seems of itself to show that. The man at the horse cannot see those in the hold, and they cannot see him. The captain can see both. He gives the signal upon which they act and must necessarily direct the work in its progress. The position which custom assigns him leaves him in practical control of the boat. He can protect it from injury. A servant of the stevedore would be less likely to do so, and very probably the custom is founded on that fact. But the consequent action of the captain is not only in the interest and for the protection of the boat, but it seems to me must be an element in the delivery of the cargo. It is a remnant of the general rule, cut down and limited by the bill of lading, and the custom relating to cargoes of coal. Let us try to see whether that must not be the truth. Suppose that when this boat arrived, the captain had given notice to the consignee, whose stevedore appeared ready to do the work, but the captain refused to touch the guy-rope, or provide anybody to do so, and the stevedore, on his part, refused to hire a man to do the duty which usage put upon the captain, could we say that the coal had been delivered and the risk of the carrier had ended? I do not see that we could. I think we should be obliged to hold that the captain's conduct was a refusal to deliver in accordance with the custom of the port, and that there was a failure to deliver the coal through his fault. Suppose again, that the stevedore should order the captain to give up the guy-rope to another, would the captain be bound to obey and stand aside for a stranger to superintend the process? To answer that in the affirmative would involve a violation of the custom. And so I have been led to the conclusion, that the duty laid upon the captain by usage is an element in the delivery of the cargo by the boat owner, and a remaining shred of the general rule cut down by the bill of lading and the custom as to coal boats at the port of New

York to the duty of giving notice and supervising the actual delivery by managing the guy. It will follow that the captain's action is as the servant of the boat owner, and in performance of the latter's duty in making delivery, and not as the servant of the stevedore. What is said in the evidence introduced on behalf of the defendant company does not necessarily tend to controvert that conclusion. That the stevedore was employed by the consignee to unload; that the delivery was to be "alongside;" that no directions to handle the guy were given by the defendant; all these are facts quite consistent with the view we have taken of the captain's position. Some other things testified to partake of the quality of opinions rather than facts, as we found to be the case in portions of the plaintiff's proof. Thus, a witness for the defendant said that the captain had nothing to do with unloading the boat; that he went by the instructions of the stevedore; that when captains hold the guy-rope they are under the direction of the stevedore. These things are true to a certain extent and beyond that are inferences merely. The man whose duty it is to manage the guy *does* have something to do with unloading the boat. That he acts, in some respects, under the direction of the stevedore may very well be true, as to the time of commencing the work or shifting the position of the boat, without depriving him of his independent authority, or making him the mere servant of the stevedore. I find it quite difficult to put him in that position.

The difficulty is sought to be lessened by the theory upon which the appellant reasons. The learned counsel insists that the custom means only that where the delivery is "alongside" the boat lends its captain to the use and service of the consignee's stevedore in performing his work of unloading. But the lending in that view is gratuitous. Why should it occur? In what did such a custom originate? How is it that the boat should give its captain's service to one bound to do the whole work for another employer? Until we can answer these questions, the theory hardly helps us. It is only another mode of stating the problem. The statement, however, opens the way to

some of the authorities upon which the defendant relies. That most confidently pressed upon our attention is *Murray v. Currie* (L. R. [6 C. P.] 24). The defendant employed a stevedore to unload his vessel. One of the ship's crew named Davis was allowed to assist in the work, the stevedore being charged for his hire. Through the negligence of Davis in doing his work, an injury happened, and it became a question whose servant he should be deemed. BRETT. J., said : " If I lend my servant to a contractor, who is to have the sole control and superintendence of the work contracted for, the independent contractor is alone liable for any wrongful act done by the servant while so employed." To make that case fit the one before us, we must first determine that the stevedore in unloading the coal was entirely independent of the captain, who had no right in any manner to interfere with the process of unloading ; and then we must further find that he was employed by the stevedore as his servant to do his work. So that the case leaves us with our principal problem unsolved. The same difficulty prevents an application of the decision in *The Harold* (21 Fed. Rep. 428).

That case, however, is cited upon another proposition which the appellant advances as a ground of reversal. That is, that the plaintiff and Logan were fellow servants engaged in one common employment at the time of the accident. But they could not be fellow servants unless they were under the control of one master, which is precisely the fundamental question under discussion. The plaintiff was the servant of the stevedore, who hired him and could discharge him and whose part of the work he was engaged in doing. To become a fellow servant with Logan, we must hold that the latter and, of course, the captain were also servants of the stevedore, which brings us back again to the primary question upon which the whole case turned.

That question was submitted to the jury as one of fact, when upon the evidence it was one of law. There was no dispute about the facts and all the contradictions are found in the opinions of the witnesses as to the force and effect of the cus-

-tom proved.  But the jury answered the question correctly
and so left no ground of complaint.  They determined, as we
have done, that the captain remained the servant of the
defendant while managing the guy, and did not pass under the
control and become the servant of the stevedore.  It follows
that the judgment should be affirmed, with costs.

All concur, except PECKHAM, J., not sitting.

Judgment affirmed.