## THE TERRIER.

### FERGUSON v. THE TERRIER.

(District Court, E. D. Pennsylvania. March 31, 1896.)

1. SHIPPING—INJURY TO STEVEDORE.
   Injury caused to a stevedore working in the hold beneath an open hatch, by the dropping down of a board upon him by the ship's servant, who was engaged in relaying the floor of the between deck, is, in legal contempla-

tion, an injury caused by the ship herself; and if the same was the result of carelessness she is liable. And it is immaterial that the person whose negligence caused the injury was also a stevedore, since in performing the said work he was acting as a servant of the ship.

2. CHARTER—CONTROL OF OWNERS.

Where the owners appoint the officers and crew and retain control, they remain liable to all the ordinary responsibilities of owners, although they have contracted for the privilege of sending a supercargo on the vessel's voyages.

This was a libel by Richard F. Ferguson against the steamship Terrier to recover damages for personal injuries.

Samuel Evans Maires and Curtis Tilton, for libelant.

Henry R. Edmunds, for respondent.

BUTLER, District Judge. The libelant sues for an injury inflicted on him by the vessel while working upon her as a stevedore.

There is no room for serious controversy about the facts involved. While the libelant, with other stevedores was engaged in the vessel's hold, unloading cargo, her agents and servants commenced relaying the floor of the between deck. This floor had been taken up and stored above for convenience in placing cargo. In passing the flooring down through a hatch immediately over the heads of the stevedores, a plank was allowed to fall, and striking the libelant inflicted serious injury. There was carelessness, both in passing the flooring down through this hatch, and in allowing the plank to fall. It should have been passed through another hatch, equally convenient, whereby all danger would have been avoided. The work was being performed by the crew under the supervision of one of the mates. The evidence does not leave these facts in doubt.

Is the ship responsible for the libelant's injury? This is the only question raised. In my judgment she is. First because she inflicted the injury. This flooring was as much a part of her, as was any other part of the structure; that it was out of place at the time is unimportant. As is said in the Kate Cann, 8 Fed. 719 (under similar circumstances) "in legal effect the blow inflicted was inflicted by the ship." And second, because it was her duty to see that the place where the stevedores worked was safe, while they were upon her. Cannon v. The Protos, 48 Fed. 919, and Records of Dist. Ct. E. D. Pa. No. 8 of 1889; The Kate Cann, 2 Fed. 243, 8 Fed. 719; The Frank & Willy, 45 Fed. 494; The Wells City, 38 Fed. 48; The Carolina, 30 Fed. 200; The Helios, 12 Fed. 732; Sherlock v. Alling, 93 U. S. 108. The Germania, 9 Ben. 356 [Fed. Cas. No. 5,360] cited and relied upon by the respondent is easily distinguished from this case. There the work on which the libelant was engaged was foreign to the business and obligations of the vessel. He was arranging the cargo to suit the convenience of a purchaser, in compliance with the consignee's contract; and the court held, in effect, that the ship owed him no duty. On no other ground, in my judgment, can the decision in that case be sustained. All the court says there must be understood with reference to the special facts stated.

The respondent asserts that one of the stevedores assisted in lowering the planks, and that the accident resulted from negligence

on his part. This assertion is not sustained by the evidence. The fact would be unimportant, however, if proved. All persons engaged about the work were the ship's agents and servants, and it would make no difference that others than her usual employés assisted; they were engaged about her business, for her benefit, and under her orders; and they were not therefore fellow workmen with the stevedores, who were engaged in unloading cargo.

The defense set up, that the vessel was under a time charter, and not in possession or charge of her owners is not sustained by the evidence. The charter proves the contrary. Under it the owners appointed the officers and crew, and retained control; and consequently remained liable to all the ordinary responsibilities of such owners. Leary v. U. S., 14 Wall. 607; U. S. v. Shea, 152 U. S. 186 [14 Sup. Ct. 519]; Marcardier v. Insurance Co., 8 Cranch, 39. A careful reading of the charter leaves no doubt of this. It is in effect a contract on the part of the owners and vessel to enter the charterer's service, under the conditions stipulated. The latter contracted for the privilege of sending a supercargo on the vessel's voyages, which is entirely inconsistent with the notion that they were to become the owners while the vessel was in their service. If the fact were as alleged, however, the responsibility of the ship for this injury would be the same—just as in the ordinary case of collision or other torts, which she may commit. No charter could relieve her of such responsibility. As is said in Sherlock v. Alling:

"By the maritime law the vessel as well as the owners, is liable for the damage caused by her torts. The vessel is deemed to be an offending thing, and may be prosecuted without any reference to the adjustment of responsibilities between the owners and employees for the negligence which resulted in the injury. Any departure from this liability of the owners or vessel has been found in practice to work great injustice."

Charterers may of course be liable also, as was held in the case of Posey v. Scoville, 10 Fed. 140, cited by the respondents. No case has been found wherein the ship was not held to be responsible for her torts under such circumstances.