## McGOUGH v. ROPNER.

### (District Court, E. D. Pennsylvania. May 6, 1898.)

#### No. 48.

1. NEGLIGENCE—LOADING SHIP.

In loading staves onto a ship with a winch it is negligence for the winch-man to run the draft rapidly up the skid without stopping at the hatch side, and warning the men below.

2. CONTRIBUTORY NEGLIGENCE.

A laborer employed in the hold of a ship in loading is not negligent in working directly beneath the hatch.

3. NEGLIGENCE—LIABILITY OF SHIPOWNER.

The owner of a ship under charter, who retains control, and furnished the officers and crew, is responsible for an injury to a stevedore engaged in loading, where such injury is caused by the negligence of the crew in operating the winch.

4. FELLOW SERVANTS.

Where a stevedore contracts to load a ship, the ship to furnish the winch and man to operate it, the man operating the winch and an employé of the stevedore are not fellow servants.[1]

This was a libel by Michael McGough against Robert Ropner, owner of the steamship Haxby, for personal injuries.

Samuel Evans Maives and Curtis Tilton, for libelant.

Convers and Kirlin, for respondent.

BUTLER, District Judge. The libelant was employed by John Dougherty, a contracting stevedore, to assist in loading the steamship Haxby in this port. Dougherty had contracted to load the steamship —she undertaking to furnish the winch and a member of her crew to work it, together with the necessary steam power, gear and tackle. The cargo consisted in part of staves, and while the latter were being taken on, in the usual manner, a draft or sling load was drawn up the skids to and across the hatch, striking the opposite side, spilling the load upon, and seriously injuring, the libelant—who was working in the hold immediately below. For this injury the libelant seeks compensation from the respondent as owner of the ship, on the ground that it resulted from the negligence or incompetency of the winchman. Numerous questions have been raised and discussed; but I deem it unnecessary to consider any other than those respecting, first, the alleged negligence of the winchman, second, the charge of contributory negligence in the libelant, and third, the respondent's liability. The testimony relating to the first of these questions is very contradictory; but a careful examination of it in the light of surrounding circumstances, has satisfied me that the winchman failed in his duty, either through carelessness or incompetency. That the draft or sling load should have been moved slowly up the skids and stopped at the hatch side, so that it could there be steadied over the opening, and lowered with safety (after warning to the men below),

---

[1] For a full collection of the cases on the question as to who are fellow servants, see note to Railroad Co. v. Smith, 8 C. C. A. 668, and supplementary note to Railway Co. v. Johnston, 9 C. C. A. 596.

seems very clear; and this I think is the customary practice pursued, notwithstanding the conflict in the testimony respecting it. Certainly no other practice can be free from danger. To run the draft up rapidly and swing it over the hatch without such stopping and steadying, would necessarily tend to accident. On leaving the upper skid it would swing violently, and beat against the opposite side of the opening (as it did in this instance), and would be likely to spill and fall upon the men below, who must at times be immediately under. Without express orders to run slowly and stop at the hatch side it would therefore appear to have been the winchman's duty to so operate the winch. I am satisfied however, from the evidence that he was expressly ordered by the hatch tender to "go easy" and "stop on the skid"; and I so find the fact. To discuss the conflicting testimony of the witnesses relating to this branch of the case would require much space and time, and be of little if any value. I, therefore, content myself with stating the conclusions reached.

Was the libelant guilty of contributory negligence? If he should not have been under the hatch at the time, he was so guilty. Inasmuch, however, as he had work to do there, and, as the evidence shows, was engaged in doing it, and was justified in expecting notice to move before drafts were swung over and lowered, he is not blamable for being there at the time. He was there because his employment required it; and that he believed himself safe is manifest from the fact that he was there. Men do not voluntarily incur unnecessary risk, and if the libelant's experience had not taught him that the situation was safe, until he should receive notice to leave, the inference is very strong that he would not have been there. His own testimony as well as that of witnesses called by him, render it very clear I think, that he is not blamable.

Is the respondent responsible for the injury? I believe he is. The fault, whether it resulted from carelessness or incompetency, was the fault of the ship, in operating its winch and tackle; for which she would have been answerable, if attached. The fact that she was under charter is not deemed material in view of the circumstances. The owner retained control, furnishing the officers and crew, and consequently remained liable to all the ordinary responsibilities of such owners. Leary v. U. S., 14 Wall. 607; U. S. v. Shea, 152 U. S. 178, 14 Sup. Ct. 519; Sherlock v. Alling, 93 U. S. 99; The Terrier, 73 Fed. 265. Nor can he, I believe, escape liability on the theory that the libelant and the winchman were "fellow servants." The subject is a much controverted one, and the authorities are not harmonious. I believe, however, the weight of the argument is with the libelant, and that the clear weight of authority in this country, at least, is also with him. I could not add anything of value to what has been said on the subject, and will not therefore enter upon a discussion of it. The suggestion that the ship was not obliged to assist in the loading, by furnishing its winch and a man to operate it, and that the contracting stevedore simply borrowed this assistance from the ship, which was furnished as matter of favor merely, finds no support in the facts of the case. The stevedore contracted to load, subject to the agreement that the ship would thus aid him in the work, and

charged accordingly. The winchman was not therefore in the employment of the stevedore but of the ship, of whose crew he was a member, and was not therefore a "fellow workman" with the libelant, in the sense in which the law uses this term. The case is not distinguishable I think, from The Victoria, 69 Fed. 160, and Johnson v. Navigation Co., 132 N. Y. 576, 30 N. E. 505. See, also, Steamship Co. v. Anderson, 50 Fed. 462, 1 C. C. A. 529; The Carolina, 30 Fed. 199; The Wells City, 38 Fed. 47. As The Victoria was decided in admiralty by a court of the United States, and is in all respects in point, I would probably feel constrained to follow it even if my judgment respecting the question were different.

Whether the winchman's failure of duty resulted from incompetency I have not found it necessary to consider. In the view I have adopted the question is unimportant.

The libel must therefore be sustained, and a decree may be entered accordingly.