MORRIS, District Judge.
This is a libel in rem to recover damages for injuries sustained by the libelant, Andrew Williams, a stevedore who was working in the hold of the barge City San Antonio, while she was lying in the port of Norfolk discharging a cargo of crushed stone. The barge was in a dock between two piers at Lambert’s Point with her bow to the river and her port side next to the wharf. The crushed stone was being taken out in buckets holding about half a ton, which were hoisted to the deck by a steam winch, and swung over to railroad cars on the pier. The barge had an intermediate deck, the crushed stone between the main deck and the between deck had been discharged, and the stevedores were working in the hold below the between deck and under the after hatch. Sufficient crushed stone had been taken out of the hold to make a pit nearly to the bottom of the hold and to *956 leave for a little extent around the edges of the hatch a space of about three feet between the top of the stone and the between deck.
There were four men working in the hold in pairs, two on the inshore or port side and two on the offshore or starboard side. Williams, the libelant, and his partner were on the port side and had filled their bucket ready to be hoisted. A gangwayman, who was a fellow workman with the libelant, was stationed on the upper deck just aft of the hatch opening, whose business it was to give signals to direct the operation of the winch by the winchman, who> was not a fellow workman with libelant, but was an employé of the owner of the barge, who was stationed where he could not see down into the hatchway where the stevedores' were working. The libelant's bucket having been filled and ready to be hoisted, the libelant and his partner attached to the ring on the handle of the bucket the two falls by which it was to be raised, and by the slackening one of which and the tightening the other the bucket could be swung inshore over the cars on the wharf and there emptied. The filled bucket was resting a little to the port side of the hatch opening and when properly hoisted the slack of the falls should be taken up slowly until they are taut and there is a moderate strain on the bucket, and then as , it slowly starts the stevedores guide it towards the center of the opening .and it goes up without striking against the hatch coamings on either ■ side.
On this occasion the winchman started the steam winch too violently and jerked the bucket away from the stevedores, causing it to swing over to the offshore or starboard side, where as it ascended it struck against the between deck hatch coaming. The violent strain broke the offshore fall and the bucket swung back to the inshore side and struck the libel-ant. The libelant, to escape the falling bucket, sought shelter under the between deck, but there was only room to obtain protection for his head and shoulders. The bucket came down on the lower part of his body and seriously injured his hip and thigh.
These facts, which were found by-the district judge, could not under the evidence be seriously controverted. The agreement of the owner of the barge was to furnish a competent winchman, and the barge owner was responsible for his defaults. The Slingsby, 120 Fed. 748, 57 C. C. A. 52; The Lisnacrieve (D. C.) 87 Fed. 570. It is clear from the testimony that the winchman provided was not careful and competent and that the power was applied to the winch by him, not slowly and properly, as is customary, but recklessly and violently. The defense relied upon by the owners of the barge, and urged in the argument, is that although the action of the winchman may have been negligent and improper, yet if he had been warned by the gangwayman that the bucket had started to swing across the hatch opening he would have shut off the steam and stopped the winch before the bucket struck the offshore coaming and that therefore the immediate fault, which was the direct cause of the accident, was the failure of the gangwayman, who was a fellow servant with the libelant, to give a timely warning to the winchman. This com tention was held by the district judge not to be supported by the proof. We entirely agree with his finding.
The only witness offered by the respondent, who had any knowledge *957 of the occurrence, was the winchman himself. His statement is that he got the usual signal to go ahead, that he started his engine slowly, and the next thing he saw was that the fall had parted. He does not state that he could have shut off the steam, if he had got a signal, in time to have prevented the bucket from striking against the coaming, or that he looked to the gangwayman for such a signal, and he offered no explanation whatever of the actual occurrence. There is no testimony anywhere in the record tending to show that the gangwayman could have seen that the bucket was going to swing against the coaming in time to give a signal which would have enabled the winchman to shut off the steam and prevent the occurrence. The depth of the hold under the between decks was only, from 8 to 10 feet and as the bucket on being snatched up violently from the port side swung rapidly to starboard, it is simply a guess to say that upon notice being given to him the winchman could have shut off the power in time to prevent the bucket striking the starboard coaming. No witness so testifies, and it does not seem probable. We think, under the proofs, the district judge was fully justified in holding that the proximate cause of the accident was the want of care and skill, on the part of the winchman, and that the accident was the natural and probable consequence of his act of negligence. Chic. &c R’way Co. v. Chambers, 68 Fed. 148, 153, 15 C. C. A. 327.
The appellant contends also that the allowance of $1,750 as damages for the injuries sustained by the libelant was excessive, having regard to his earnings. The libelant was a steady reliable man and had been a stevedore from 8 to 10 years in the service of the same employers. His injuries were serious and probably permanent. The district judge saw the man and his physical condition. There is nothing in the amount that suggests that the sum allowed him is excessive.
Decree affirmed.