THE BOVERIC.

(Circuit Court of Appeals, Ninth Circuit. February 1, 1909.)

No. 1,637.

MASTER AND SERVANT (§ 193*)—FELLOW SERVANTS—HIRING SERVANT TO ANOTHER.

Where a charter party required the ship to furnish the power, winch, and winchmen for discharging cargo, that is the contribution of the vessel to the common work of discharging, and a winchman so furnished is not a fellow servant with the men of a stevedore, employed by the charterer to do the other part of the work, although the foreman of the stevedores gives the signals for the movements of the winch; and for the negligence of a winchman, resulting in injury to one of such men, the vessel is liable.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 485; Dec. Dig. § 193.*

Who are fellow servants, see notes to Northern Pac. R. Co. v. Smith, 8 C. C. A. 668; Flippin v. Kimball, 31 C. C. A. 286.]

Appeal from the District Court of the United States for the Second Division of the District of Alaska.

The steamship Boveric was chartered by the Northwestern Steamship Company, Limited, for a voyage to Nome and Solomon, Alaska, and return to British Columbia, to carry a cargo of coal for the charterer. On arriving at anchorage off Solomon, the charterer engaged the North Coast Lighterage Company, a corporation engaged in the business of lightering, to discharge the cargo, the ship to furnish steam winches and power and two winchmen to operate the same. The appellee was one of the stevedores of the lighterage company engaged in discharging the ship, and while working in the after hatch, loading sacked coal into the ship's slings, was injured by the falling of the sling and the scales attached thereto. The owners, answering the libel, alleged that both the charterer and the lighterage company were corporations of the state of Washington, and that the whole of the stock of each was owned and controlled by another corporation of that state, the Northwestern Commercial Company. This allegation was put in issue by the reply, and no evidence was taken to substantiate it. By the terms of the charter party, the owners agreed to operate the ship at their own expense, and to furnish a full complement of officers, engineers, and seamen. It contained the following provisions: "That the captain (although appointed by the owners) shall be un-

der the orders and directions of the charterers as regards employment, agency, or other arrangements." "Steamer to work night and day, if required by charterers, and all steam winches to be at charterer's disposal during loading and discharging, the steamer to provide men to work the same both day and night, if required; charterers agreeing to pay extra expense, if any, incurred by reason of night work, at the current local rate." The court below found that the accident occurred through the negligence of one of the winchmen, and held that the winchman was an employé of the ship, and was not a fellow servant with the appellee, and awarded the appellee damages in the sum of $1,500.

Dudley Du Bose, H. Y. Freedman, T. M. Clowes, Thos. R. Shepard. W. H. Bogle, and Charles P. Spooner, for appellants.

John Rustgard, Campbell, Metson, Drew, Oatman & Mackenzie, and E. H. Ryan, for appellee.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). The question here is whether the appellee was the fellow servant of the winchman through whose negligence the injury occurred. The rule is well settled, as stated by Cockburn, C. J., in Rourke v. White Moss Collier Co., 2 C. P. D. 209, that:

"When one person lends his servant to another for a particular employment, the servant, for anything done in that particular employment, must be dealt with as the servant of the man to whom he is lent, although he remains the general servant of the person who lent him."

But whether the servant of one master, when temporarily placed under the direction of another master as to some particular service to be rendered, becomes the fellow servant of the employés of the latter, under the varying circumstances of different cases, often gives rise to question. It is impossible to harmonize the conflicting decisions or to evolve therefrom a test universally applicable. In Johnson v. Lindsay [1891] App. Cas. 371, Lord Watson, in defining the circumstances under which the servant of one may become the fellow servant with the servant of another, said:

"in order to produce that result, the circumstances must be such as to show conclusively that the servant submitted himself to the control of another person than his proper master, and either expressly or impliedly consented to accept that other person as his master for the purposes of the common employment."

In Coughlan v. Cambridge, 166 Mass. 268, 277, 44 N. E. 218, 219, it was said:

"The test is whether, in the particular service which he is engaged to perform, he continues liable to the direction and control of his master, or becomes subject to that of the party to whom he is lent or hired."

In the case of The Slingsby, 120 Fed. 748, 57 C. C. A. 52, a case similar to the case at bar, cited by the appellee, it is said that of all suggested tests the most satisfactory is whether the master to whom the servant of another is loaned has the power of substitution of one man for another. In The Elton, 142 Fed. 367, 73 C. C. A. 467, a case also quite similar to the present case, and relied upon by the appellant, it was said that the true test was whether both the servants were at the time of the accident working in a common employ-

ment, under the same general direction and control. We may apply any or all of these tests to the present case, and measured by none of them do we find the appellee to have been the fellow servant of the winchmen.

No complication is brought into the case by the fact that the ship was under charter. The question to be solved stands as it would if there had been no charter party and the lighterage contract had been made by or on behalf of the owners. Leary v. United States, 14 Wall. 607, 20 L. Ed. 756; Sherlock v. Alling, 93 U. S. 99, 23 L. Ed. 819; United States v. Shea, 152 U. S. 178, 14 Sup. Ct. 519, 38 L. Ed. 403; The Terrier (D. C.) 73 Fed. 265; McGough v. Ropner (D. C.) 87 Fed. 534. The winchmen were in the employment of the ship. Among their specified duties, according to the charter party, was that of operating the winch in discharging cargo. In doing that work, according to the evidence in this case, they never left their master's employment, but were at all times subject to the control of the officers of the vessel who assigned them to their task. They were not lent to the lighterage company, nor were they aiding that company in the discharge of its contract. They were doing the services which the ship contributed to the common work of unloading the vessel. They were doing nothing for which the lighterage company was paid. The contract was that the ship was to furnish the power, the winch, and the winchmen, and the lighterage company was to do the rest.

The simple fact that the foreman of the stevedores gave the winchmen signals to raise and lower the winch was not in itself sufficient to place the winchmen under his control. In the very nature of the work, it was necessary that some one should give such signals, and the stevedores, who had charge of the loading of the sacked coal into the slings and unloading the same, were in the best position to give them. The lighterage company had no other control over the winchmen. In this respect the case differs from that of The Elton. In that case the testimony was that the officers of the ship had no direction or control of the winchman in the actual work of unloading, and that the stevedore could have removed him and put another in his place at any time. The court said:

"If the winchman showed incompetence, it would have been the duty of the stevedore to have exercised this power of removal."

In the present case the evidence is that, prior to the accident, the foreman of the stevedores complained of the winchmen to the mate of the vessel. He testified:

"I told him they were incompetent and careless. He said he could not do any better; said I would have to put up with it."

The case is identical with the leading case of Johnson v. Netherlands American Steam Navigation Co., 132 N. Y. 576, 30 N. E. 505. In that case the plaintiff was in the employment of one Lithman, a stevedore engaged in unloading a vessel belonging to the defendant. Under the contract the stevedore was to be paid a stipulated price per ton for unloading and the defendant was to furnish the steam power and a man to run the winch. The plaintiff was to give

the signals to the winchman. Through the negligence of the winchman he was injured. The court said:

"It is claimed that Lithman was an independent contractor, having charge of all of the men engaged in unloading the vessel, and that the defendant is not liable for the negligent act of servants working under his direction. The question is as to whether the winchman was the servant of Lithman, and consequently the co-servant of the plaintiff. Lithman testified that he was paid by the ton; that the vessel furnished the steam power and the winch driver. This is the evidence as to the contract with the defendant. It does not appear that he had the power to order, direct, discharge, or control the winch driver farther than to signal to him by way of the gangwayman when to hoist or lower, go ahead or come back. It consequently does not appear to us that the winchman could be regarded as the servant of Lithman. It is quite apparent that it was the intention of the defendant to retain charge of the steam power and winch and operate it through its own servants and employés. And the fact that the winchman received orders from the plaintiff when to hoist and when to lower, under the circumstances of this case, does not operate to change his relations to the defendant as its servant."

In harmony with that decision and with the case of The Slingsby, above cited, are the decisions of the Circuit Courts of Appeals for the Fourth and Sixth Circuits in The City of San Antonio, 143 Fed. 955, 75 C. C. A. 27, and Otis Steel Co. v. Wingle, 152 Fed. 914, 82 C. C. A. 62.

The decree of the District Court is affirmed.