## CALISTA PECK v. MICHIGAN CENTRAL R. R. Co.

*Railroad injury—Flagman's warnings.*

Two railroad tracks controlled by the same company crossed a highway near each other, one on a bridge and the other on a level. A flagman employed for the latter track had for years been in the habit of warning travelers upon the highway of the approach of trains to cross the bridge on the other. In so doing his signals once misled a person driving, so that the latter advanced at the wrong time, and the horse was frightened by a train passing over the bridge. The driver was thrown out and injured, and sued the company, which defended on the ground that the flagman was not acting in the line of his employment. *Held*, that it was for the jury to say whether the flagman, who was a servant of the defendant, did not act by its assent, express or implied, or under its direction, in flagging for the bridge.

Error to Jackson. (Gridley, J.) April 30.—May 13.

CASE. Plaintiff brings error. Reversed.

*Thos. A . Wilson* for appellant. If a railroad company that is not required to keep a flagman at a crossing does so, notwithstanding, it is liable for the flagman's negligence: Price on Railroads, 354; *Dolan v. Del. & H. C. Co.* 71 N. Y. 285; *Casey v. N. Y. Cent. &c. Co.* 78 N. Y. 518; *St. Louis v. T. H. R. Co.* 78 Ill. 197; *P. & Read. R. Co. v. Killips* 88 Penn. St. 405; *Sweeny v. Old Colony & Newport Co.* 10 Allen 368; Thompson on Negligence 408, 419; *Borst v. L. S. & M. S. R. R. Co.* 4 Hun 346; *Warren v. Fitchburg Ry. Co.* 8 Allen 227; *Wheelock v. B. & A. Ry. Co.* 105 Mass. 203, 207; a gate-keeper employed to close the gates during the passage of trains, erroneously informed a person who wished to cross, to "come on," and the company was held liable for injuries resulting from accepting the invitation: *Lunt v. London &c. R. R. Co.* L. R. 1 Q. B. 277.

*Gibson & Parkinson* for appellee.

CHAMPLIN, J. Mechanic street is one of the principal streets in the city of Jackson, running from the center of the city to the State's Prison. The railroad belonging to defendant company crosses Mechanic street on a bridge some fifteen feet above the highway. The railroads of the Jackson, Lansing & Saginaw Railroad Company cross Mechanic street, on a level therewith, about fifty feet north of defend. ant's road. This road is also used by the Grand River Valley Railroad Company. The Jackson, Lansing & Saginaw and the Grand River Valley Railroad Companies' roads are under the control of and operated by defendant. Clinton street runs west from Mechanic street and intersects it just south of the railroad bridge. The defendant has for several years employed a flag-man who was stationed at the intersection of the Jackson, Lansing & Saginaw Railroad with Mechanic street, whose duty it was to prevent, so far as he could do so, accidents at the crossing of the Jackson, Lansing & Saginaw railroad with Mechanic street. He had received no instructions relative to performing any duty with reference to the passing of trains upon the Michigan Central Railroad, but

he had, on his own responsibility, assumed to warn travelers with vehicles upon Mechanic street of the approach of trains on the defendant's road, which would pass over the bridge in question. The diagram will indicate the position of the streets and roads referred to:

Center of track under bridge to where horse stopped, 55 ft.

Center of track under bridge to where watchman stood, 28 ft.

Center of main-line track to center of Saginaw track, 51 ft.

Mechanic street bridge.

On the 21st of November, 1881, the plaintiff and her sister were passing along Mechanic street in a buggy drawn by a single horse. They approached the railroad bridge from the south, and when within about ten rods from the bridge, they saw the flag-man stationed at the crossing making signals for them to stop. They were about to do so, when he again signaled them to go forward, which they did, and had nearly reached the bridge when a passenger train from the west passed over the bridge in front of and nearly over them. She turned her horse to the west, when he threw up his head, gave a spring to the west, and threw her out. She was driving the horse at the time of the accident. When she fell from the buggy she dropped the lines, and the horse started to run on Clinton street, but was stopped in a short distance by her sister who remained in the buggy and recovered the lines. The plaintiff was seriously injured.

The plaintiff in her declaration alleges that it was necessary, and the duty of the defendant, to have and keep, and the defendant then and there kept, a flag-man at the place where said railroads cross said streets, whose duty it was then and there to warn persons passing along said street with teams and vehicles, of the approach of trains of cars upon said railroads, and to prevent teams and vehicles from passing underneath the track of said Michigan Central Railroad when trains were passing along the same and over said street; that plaintiff understood from the acts and motions of the flag-man that she could pass said railroad tracks safely before said train of cars would arrive at said street, and she then drove forward; and when she had reached a point nearly under the Michigan Central Railroad track the flag-man motioned them to stop, and while so waiting the train passed on the Michigan Central Railroad, nearly over the horse, which thereby became frightened and unmanageable, and turned suddenly, and threw plaintiff out of said buggy upon the ground with great force and violence, " whereby, and by means of the premises, and by reason of the gross carelessness and negligence of said defendant and of said defendant's agent and servant, said flag-man, in motioning and beck-

oning the plaintiff and her said sister to go forward, as afore-said when they were at a safe distance from said railroads, and in motioning them to stop as aforesaid, when they might then and there have gone forward, and without any fault or negligence on the part of the plaintiff or her said sister, the plaintiff was then and there greatly hurt, and injured inter-nally and in her back and in one of her limbs, and otherwise hurt, bruised and injured."

The plaintiff called the flag-man as a witness, but he testi-fied positively that the company did not employ him to flag trains on the main line, and gave him no instructions to do so. He admitted that he had assumed to do so, and had for years warned people of the approach of trains on the main line to avoid accidents. The court directed a verdict for the defendants. This, we think, was error. The flag-man was the servant of defendant. Although he may have had no positive instructions to perform any duties in connection with the main line, or to warn persons with teams and vehicles of the approach of trains on the main line, yet the fact that he had uniformly performed such duty for several years was competent evidence to be submitted to the jury as tending to prove that he was so acting by the express or implied assent of defendant; and if the jury should be satisfied from the evidence that the flag-man was performing the duty of warn-ing persons of the approach of trains on the main line by the direction of the defendant, then it would be liable if its servant so negligently discharged his duty in that respect as to lead the plaintiff into a place of danger from which she received an injury by reason of such negligence, her own want of care not concurring to produce such injury. The case should have been submitted to the jury under proper instructions from the court.

The judgment must be reversed and a new trial granted.

The other Justices concurred.