## TAGGART v. REPUBLIC IRON & STEEL CO.

(Circuit Court of Appeals, Sixth Circuit. November 13, 1905.)

No. 1,415.

1. RAILROADS—OHIO STATUTE REQUIRING BLOCKING OF FROGS—PRIVATE SWITCHES.

A manufacturing company, maintaining in its yards a number of tracks and a switch engine for its use in shifting freight cars, is not a "railroad corporation operating a railroad or part of a railroad," within the meaning of 93 Ohio Laws, p. 342, requiring such railroad corporations to block their frogs.

[Ed. Note.—Duty to block switches, see note to Hauss v. Railroad Co., 46 C. C. A. 98.]

2. MASTER AND SERVANT—ACTION FOR INJURY TO SWITCHMAN—QUESTIONS FOR JURY.

Plaintiff was employed as a switchman in the yards of defendant, a manufacturing company. and in stepping between slowly moving cars to uncouple the same, after the automatic coupler failed to work, his foot caught in an unblocked frog, and he was injured. There was testimony that the couplers on a large number of cars switched in the yards would not work, and that it was customary in such case, and in fact often necessary, for the switchman to go between the cars; and there was no rule prohibiting it. Plaintiff had worked there but 12 days, and testified, without contradiction, that he did not know the frogs were unblocked, because they were covered with cinders. *Held*, that the question whether plaintiff was negligent in attempting to make the coupling as he did, and also the question whether, if so, his negligence was a proximate cause of his injury by reason of the unblocked frog, were questions for the jury.

In Error to the Circuit Court of the United States for the Northern District of Ohio.

King & Tracy and Marshall & Fraser, for plaintiff in error.

Richard Jones, Jr., and Holbrook & Monsarrat, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

RICHARDS, Circuit Judge. This was a suit to recover damages for personal injuries (the loss of a foot) suffered by the plaintiff while in the employ of the defendant as a yard switchman. The court directed a verdict against the plaintiff, on the ground that the testimony showed he was guilty of contributory negligence. The case is here upon the question whether it was one for the jury.

The accident took place on August 8, 1903. Taggart, the plaintiff, was then 35 years old, and had been employed by the steel company about 12 days. Before that time, he had been employed some 3 years as a brakeman in yard and road service. The company owns and operates a rolling mill near Toledo, Ohio, and in connection with it a number of tracks and switches in the yard which incloses its plant. On these tracks it operates a pony or switch engine for convenience in shifting freight cars. For this purpose it employs an engineer and a switchman. On the day of the accident, the plaintiff and the engineer were engaged in switching cars in the yard. Three box cars were attached to the engine. It was necessary for the plaintiff to cut off two of these cars by uncoupling them. The cars were moving at the rate of from two to

four miles an hour. The cars to be uncoupled were each provided with an automatic coupler. The plaintiff was on the west side of the train, the same side as the engineer. There was testimony tending to show it was necessary for him to be here, because only from this side could he signal the engineer, and because a sand bin and other obstructions came so close to the track on the other side as to prevent an approach to the cars there. Walking along as the train moved, the plaintiff two or three times attempted to uncouple the cars by the use of the lever of the automatic coupler, but it would not work. He says the chain was so long it would not lift the pin. At any rate, failing to uncouple the cars by the use of the automatic coupler, he stepped between them for the purpose of lifting the pin with his hand. As he stepped in, his foot was caught in an unblocked frog and crushed and mangled by the moving car before he could extricate it. The testimony was conflicting as to whether the cars could have been safely uncoupled while standing still. The engineer, who had had no experience as a switchman, thought they could. The plaintiff and other switchmen said they could not. The court took the view that, since the cars were equipped with automatic couplers, the switchman was bound to uncouple them without going between them, and, if there were obstructions on the other side, he should have signaled the engineer to move the cars further up, and then have gone around and tried the coupler on the other side. Since he did not do this, but took "the more dangerous way," he was guilty of contributory negligence. Respecting the testimony of the plaintiff that it was the custom in that yard to uncouple by hand while the cars were in motion when the automatic coupler would not work, the court said that no custom of that sort could change the inherent negligent character of the act of unnecessarily going between the cars when they were moving.

1. Counsel discussed the question whether the Ohio statute requiring railroad companies to block their frogs did, or did not, apply to the defendant. The act in terms applies to "every railroad corporation operating a railroad or part of a railroad in this state." 93 Ohio Laws, p. 342. Failure to comply with the act subjects the railroad corporation to a punishment by fine. Although, by the law of Ohio, a manufacturing company may construct a railroad, when such purpose is stated in its articles of incorporation (Rev. St. § 3866), and with respect to it is made subject to the general railroad laws of the state, we are not satisfied that the yard tracks and switches, operated by the defendant in the manner we have described, come within the intent and meaning of this statute. U. S. v. Harris, 177 U. S. 305, 20 Sup. Ct. 609, 44 L. Ed. 780. They do not seem to us to constitute a railroad or make this manufacturing company a railroad corporation under the law of Ohio. We might as well hold that every private switch constitutes a railroad and makes the person or company owning and operating it a railroad corporation. These yard tracks are nothing more than private switches and were only used as such. There were some 10 frogs in this yard, all unblocked, and covered with cinder, so their character was not open and obvious. The failure to block them, if not negligence as a matter of law under the Ohio statute, might have been held by the jury to be negligence in fact under all the circumstances.

2. The real question in the case, as submitted to us, is whether the court was correct in holding that the plaintiff had been guilty of contributory negligence in stepping between the cars. We think the court was not; that the rule laid down in the case of L. E. & W. R. R. Co. v. Craig, 73 Fed. 643, 19 C. C. A. 631, and Id., 80 Fed. 488, 25 C. C. A. 585, required the submission of the question to the jury. Taggart had been employed in the yard only 10 or 12 days. He was not informed that the frogs were unblocked. He says he did not know they were unblocked, that the cover of cinder concealed their character, and there was nothing to contradict him, except an inference—the inference that because he was working there he must have noticed their character. In answer to this, it might be said that, having worked where the frogs were required by law to be blocked, he would naturally presume, without examination, that these frogs were blocked. The company had no rules to regulate his work. In the Craig Case there was a rule forbidding employés to go between the cars when coupling or uncoupling, but the plaintiff was permitted to show that the company practically abrogated or abandoned the rule by acquiescing in its constant violation. In the present case there was no rule, and there was testimony tending to show that it was usual and customary for the switchman to step in and lift the pin when the automatic coupler would not work, although the cars were in motion. The yard boss testified to this. There was also testimony of a substantial kind, tending to show it was not only customary, but, as a practical thing, necessary and proper, for the plaintiff, under the peculiar circumstances presented to him, to step in for the purpose of lifting the pin; that he had to work on that side, both to signal the engineer and because there were obstructions on the other; and he had to uncouple the cars while moving because they could not be uncoupled when standing still without unreasonable difficulty and delay, if not danger. To the suggestion that the presence of the automatic couplers changed the situation, it may be said that such a coupler to be effective must work. The uncontradicted testimony was that this coupler would not work and there was testimony to the effect that 80 per cent. of the couplers tried in the yard would not work. It may have been that the cars used there did not come under the federal act. That act, as we have held, is limited to cars used in interstate commerce. U. S. v. Geddes, 131 Fed. 452, 65 C. C. A. 320. But, however that may be, a car with an automatic coupler that will not work is to all intents and purposes a car without an automatic coupler, and the switchman must handle it in the old way, dangerous though that may be.

This brings us to another consideration, whether, if Taggart was negligent in stepping in to lift the pin, such negligence contributed directly to his injury; in other words, whether he should have anticipated the accident which befell him. Ought he to have forseen the unblocked frog? The record does not show that the cars were moving at a speed dangerous in itself. If Taggart, in stepping in, had stumbled and had been run over, or in lifting the pin had caught his hand and had it crushed, it might well be said that these were contingencies he should have anticipated, and that his negligence in exposing himself to such dangers was the proximate cause of his injury; but there was testimony

tending to show that he had no reason whatever to apprehend the danger of the unblocked frog. That was a danger to which he would have equally exposed himself in walking ahead of a moving train or in going around it to get to the other side. Both these things switchmen frequently have to do. In the Craig Case it was held that this question of proximate cause was one for the jury. 73 Fed. 642, 646, 19 C. C. A. 631.

Being of the opinion that the case was one for the jury, the judgment is reversed, and the case remanded for a new trial.