## OTIS STEEL CO. v. WINGLE.

### (Circuit Court of Appeals, Sixth Circuit. April 11, 1907.)

### No. 1,614.

**1. MASTER AND SERVANT—NEGLIGENCE—INJURIES TO THIRD PERSON.**

Plaintiff, a servant of an independent contractor, went to defendant's mill for the purpose of hauling certain steel plates for defendant. The plates were uniformly loaded on the wagons by two movable cranes, which operated simultaneously and placed the plates on the wagon in the position indicated by the driver. Plaintiff took a position on one side of the front wheels of the wagon, and directed defendant's servant in charge of the cranes to move them forward a trifle in order to drop the plates in the correct position on the wagon. The front crane was started forward by defendant's servant in charge of it without waiting to see that the other was also moving, which resulted in pulling out the front hook and permitting the plates to swing toward plaintiff and strike him, before he could escape. *Held,* that defendant was actionably negligent.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 1217–1225.]

**2. SAME—CONTRIBUTORY NEGLIGENCE.**

Plaintiff was not, also, negligent as matter of law in standing in the position taken by him.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 1274.]

**3. SAME—FELLOW SERVANTS—SERVANT OF INDEPENDENT CONTRACTOR.**

Plaintiff was the driver of one of several teams owned by his father, who hauled steel plates for defendant as an independent contractor. The driver of another wagon had placed the same to receive plates which were lowered by two overhead cranes, and requested plaintiff to superintend the placing of the plates in position on his wagon. Plaintiff directed the cranes to be moved slightly ahead, when defendant's servant in charge of one of the cranes moved it forward before the other crane was started, which resulted in plaintiff's injury. *Held,* that plaintiff was not a fellow servant for the time being of the crane operator.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 482.

Who are fellow servants, see note to Northern Pac. R. Co. v. Smith, 8 C. C. A. 668; Flippin v. Kimball, 31 C. C. A. 286.]

In Error to the Circuit Court of the United States for the Eastern Division of the Northern District of Ohio.

The defendant in error, a teamster, while engaged in taking on a load of steel plates at the mill of the plaintiff in error, sustained an injury from the slipping of a bundle of suspended plates out of the hooks, and lost a leg. Michael Wingle, the father of the defendant in error, Francis Wingle, owned a number of teams, and did hauling as an independent contractor. The Otis Steel Company, makers of steel plates, had a contract with him to do such hauling for them as they should be unable to do with their own facilities, at a fixed price per ton. Upon the occasion in question, two of his wagons had been sent to the steel mill to receive loads. One of these wagons was driven by a teamster named John Nuss; the other was driven by the defendant in error. But one wagon could be loaded at the same time, and the wagon of Nuss was first backed into the mill and placed in position for loading. The plates to be hauled were about 25 feet in length and 4 feet wide. It was the business of the Otis Company to place these plates upon the wagons in such position as the teamster might indicate as best for their safe carriage. To carry these plates to the loading platform and place them on the wagons, two overhead cranes were used, moving independently, but in unison, and operated by

the servants of the company. To lift and move these plates there was attached to each crane a set of hooks connected with the cranes by means of a chain. These plates were only about one-half inch thick, and a bundle of seven or eight were customarily carried at one time for loading. One set of hooks would be attached to the forward end of the plates, and the other set to the other end. When the hooks were thus attached, the plates could be securely lifted and moved into position over the wagon; but to do so without danger of their slipping out of the hooks it was essential that the cranes should be operated together. On the day when Francis Wingle was hurt, a usual number of plates had been brought from the rear of the mill to the wagon and were suspended over the wagon driven by Nuss and there stopped. Nuss was inexperienced in loading, and at this stage he called on defendant in error, who was outside the mill with his own team, to come in and show him how to proceed with the loading. He came in accordingly, passed by Nuss' horses, and took a place on one side of the front wheels of his wagon. Seeing from the position of the suspended plates that, if lowered then on the Nuss wagon, they would rest too far back on the wagon and be liable to slide off while being hauled, he called out to the boys in charge of the cranes, "Come ahead, boys," and motioned with his hand. The front crane was started forward by the boy in charge of it, without waiting to see that the other was also moving. The result was that the plates did not move, but the front hook, on the side of the plaintiff below, pulled out. The plates were at this moment suspended 1½ or 2 feet above the wagon, and were prevented from falling on the wagon by the hook on the opposite side of the front end, so that they were caused to swing toward plaintiff and slide to one side, catching him before he could get out of the way.

D. H. Tilden, for plaintiff in error.

F. M. Cobb and R. B. Newcomb, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

LURTON, Circuit Judge, delivered the opinion of the court, after making the foregoing statement of the case.

The court below instructed the jury that Wingle was not the fellow servant of the boys operating the cranes, and that the negligent act of moving one crane in advance of the other, thereby causing the plates to slip out of the hooks attached to the forward crane, was one for which the Otis Steel Company was responsible. The question as to whether the defendant in error had contributed to his own injury by standing unnecessarily in a place of danger, he submitted under proper instructions to the jury. There was a verdict and a judgment for the plaintiff. It is now insisted that the court erred in instructing the jury that the defendant below was guilty of negligence, and in not instructing them, as requested, to find for the plaintiff in error.

That there was negligence in failing to move these two cranes forward at the same moment is demonstrable. The effect of moving one before the other would be to leave the plates in their suspended position over the wagon, and would, inevitably, pull the forward hooks or one of them loose and cause the plates to slide, as they did, to one side. It was therefore not error to say that the movement of the forward crane by the servant of the plaintiff in error, without seeing that the other crane was started at the same time, was negligence. Neither was Wingle the fellow servant of the man operating the crane. Wingle was the servant of his own employer, who was an independent contractor. It was the business of the plaintiff in error to place the plates in such position upon the wagon as should be indicated

by the driver. If, in doing this, it was done negligently, it was the actionable negligence of the Otis Steel Company. But it is said that, in respect to this particular transaction of loading this wagon with these plates, the plaintiff became for the time the servant of the Otis Company, and those in charge of the cranes his fellow servants. The fact that Wingle was the general servant of his father would not, as matter of law, prevent him becoming the particular servant of the Otis Company. That he was employed and paid only by his father would not preclude his' becoming ad hoc 'the servant of the plaintiff in error in a particular transaction. Powell v. Construction Co., 88 Tenn. 692, 701, 13 S. W. 691, 17 Am. St. Rep. 925; Byrne v. K. C., etc., Ry. Co., 61 Fed. 605, 9 C. C. A. 666, 24 L. R. A. 693. In Powell v. Construction Co., cited above, it was said that:

"The better test would seem to be: Was he, in regard to the particular matter in which he was employed, doing the work of a general master, or was he engaged in doing the work of another, over whom the general master had no control?"

It was undoubtedly the business of the driver of the wagon being loaded to indicate the position of the plates on his wagon in which they might be most safely and advantageously carried. But it was the business of the Otis Steel Company to place the plates upon the wagon in such position as should be indicated. Plainly there was no lending of the cranes and the men operating them to Wingle, the hauling contractor, or his drivers, for it was not the business of Wingle to load the plates. Neither was there any lending of the driver to the Otis Company for the purpose of assisting that company in its duty. Each had a distinct duty to perform, and Wingle's did not begin until the loading was finished. The only direction he gave, or had a right to give, was to move the cranes forward slightly, and this because, if the plates were dropped from the hooks at the point where the movement of the cranes had been stopped, they would not ride well on the wagon. The simple giving of a direction or a signal for the cranes to move forward a little, that the load might be better placed, was no transfer to the service of the Otis Steel Company, but a proper discharge of his duty as the servant of the owner of the team, to see that the loading was properly done by the Otis Company. In obeying the signal to move forward, the operator was acting only as the general servant of the Otis Company. The duty to comply was a duty imposed by his contract of general hiring, and not by reason of any authority the driver had or any which he could enforce. The Otis Company undertook to move the plates into proper position for carriage, and it was its duty to obey the signals of the driver indicating when the plates were in proper position on the wagon. The circumstances of the case bring it quite within the principles applied in The Lisnacrieve (D. C.) 87 Fed. 570, McGough v. Ropner (D. C.) 87 Fed. 534, and The Slingsby, 120 Fed. 748, 57 C. C. A. 52, where stevedores were injured by the negligence of a servant of the ship in operating a winch, although the winchman operated the winch by direction or signal from the stevedore. The carriage cases of Quarman v. Burnett, 6 M. & W. 499, Jones v. Liverpool, 14 Q. B. D. 890, and Little v. Hackett, 116 U. S. 366, 6 Sup. Ct. 391, 29 L. Ed.

652, are also in point. In those cases it was held that one who hires a hack or cab with a driver is not responsible for the driver's acts of negligence, where he assumes no further control than to tell him where to drive, or stop, or start. The negligence of the plaintiff in error was so demonstrable upon the undisputed facts of the case that there was no question for submission to the jury, and the court was quite within its authority when it instructed the jury to that effect. "When but one inference can be reasonably drawn from the evidence, the question of negligence or no negligence is one of law for the court." District of Columbia v. Moulton, 182 U. S. 579, 21 Sup. Ct. 840, 45 L. Ed. 1237.

Neither did the court err in submitting the question of contributory negligence to the jury. The weight of evidence did establish that it was usual for the driver of a wagon receiving a load of steel plate to stand between his horses, upon the wagon tongue. This was, doubtless, due to the fact that he would be out of the way, and, in case they should slip or fall, be in a reasonably safe place and in a position to control his horses and guide the plates by his hand, if necessary. Nuss, the driver of this wagon, was at the time on the wagon tongue, and escaped injury. Wingle stood on the ground, not under the suspended plates, as seems to have been the theory of counsel, but out upon one side of the front wheels. If the plates had fallen, they would not have hit him. One hook slipped. The plates were slued around toward and slid sideways against him before he could get away. The inference of negligence or no negligence in standing where he did is not so plain and indisputable as to become a question of law. The facts of the case bring it within the rule applied by this court in Erie R. R. Co. v. Moore, 108 Fed. 986, 46 C. C. A. 683, Michigan Headlining & Hoop Co. v. Wheeler, 141 Fed. 61, 72 C. C. A. 71, and Taggart v. Republic Iron & Steel Co., 141 Fed. 910, 73 C. C. A. 144.

Judgment affirmed.