WORTHINGTON v. ELMER.

(Circuit Court of Appeals, Sixth Circuit. July 22, 1913.)

No. 2,335.

1. TRIAL (§ 178*)—MOTION FOR DIRECTION OF VERDICT—REVIEW OF EVIDENCE.
    On a defendant's motion to direct a verdict, it is the duty of the court to take the most favorable view of the plaintiff's evidence and from that evidence and the inferences reasonably and justifiably to be drawn therefrom determine whether or not under the law a verdict might be found for the plaintiff.
    [Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 401–403; Dec. Dig. § 178.*]

2. MASTER AND SERVANT (§ 276*)—ACTION FOR DEATH OF SERVANT—INFERENCE FROM EVIDENCE.
    Where a brakeman, who was killed in a collision between cars which were being switched in the yards, was last seen on one of the two moving cars, upon which it was his duty to set the brakes, and the nearest brake on the next car was found to be defective, it is a fair inference, in the absence of any evidence to the contrary, that he continued in the performance of his duty and attempted to set the defective brake.
    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 950–952, 954, 959, 970, 976; Dec. Dig. § 276.*]

3. MASTER AND SERVANT (§ 205*)—MASTER'S LIABILITY FOR INJURY TO SERVANT—ASSUMPTION OF RISK.
    Aside from any statutory requirement, it is the duty of a railroad company to furnish cars with brakes free from defects discoverable by the exercise of ordinary care, and an employé using the same has a right to rely on this duty being performed and does not assume the risk arising from such a discoverable defect.
    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 547–549; Dec. Dig. § 205.*
    Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

4. APPEAL AND ERROR (§ 977*)—REVIEW—MOTION FOR NEW TRIAL.
    A showing made on a motion for new trial that the widow, for the death of whose husband the action was brought, had remarried, and the fact was concealed, was addressed to the discretion of the court, and its decision is not reviewable by an appellate court, especially as the remarriage could not have been shown in mitigation of damages.
    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3860–3865; Dec. Dig. § 977.*]

In Error to the District Court of the United States for the Western Division of the Northern District of Ohio; William L. Day, Judge.

Action at law by D. Theodore Elmer, administrator of the estate of Clarence W. Rice, deceased, against B. A. Worthington, as receiver of the Wheeling & Lake Erie Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

The railroad company, through its receiver, prosecutes error to a judgment entered upon a verdict recovered below by Elmer, as administrator of the estate of the decedent Rice. The action was brought under the Employer's Liability Act for the benefit of decedent's surviving widow and child. Rice met his death on the night of September 19, 1910, while in the employ of the company as a brakeman, called "fieldman," in the railroad yard at Toledo. He was one of a crew then engaged in making up a train by switching cars

over a lead track to and from one or more of its intersecting tracks, which were numbered from 1 to 8. The particular operation which resulted in Rice's death involved the "kicking," as it is called, of two cars over the lead track from a point near track No. 2 to track No. 8; the intervening switches having been lined up for that purpose. It is admitted that Rice's employment was upon cars, including the two in question, which were used at the time in carrying interstate commerce.

The grounds of recovery alleged in the petition were, in substance, that the kicking movement of the two cars was made at an excessive speed and so as to bring them into contact with other cars standing on the lead track near track No. 8; that these two cars were not "provided with good and sufficient brakes" to control their movement; and that the brake on one of the cars was defective (that is, the ratchet wheel and dog were loose, and so revolved upon the brake staff as to prevent Rice from setting the brake). It was further in effect alleged that a custom prevailed in the yards which required the fieldman to board one of a cut of cars, such as these, while in motion, for the purpose of preventing them from coming into contact with cars standing near the place designed for the moving cars. Issue was joined by answer and reply. The answer admitted the allegations of the petition, except those of negligence, and alleged that: " * * * If it is shown that the defendant was guilty of any of the negligence charged against him (the receiver), then defendant says that said decedent at the time of said accident so carelessly and negligently performed his duties in connection with the stopping of said cars as to directly contribute to the said accident and his death."

Rice's death was brought about in this way: When the two cars were thrust forward by the engine they were unattended, and as they approached track No. 3 Rice ran to meet them, passed the first one, a box car, and boarded the second one, an oil tank car. He was seen working the brake of the oil car, but was not seen thereafter until his body was discovered between the rails of the lead track at No. 7. His lantern was seen on the platform of the oil car while he was operating the brake, and the disappearance of the light of the lantern, together with the sound caused by the impact of this cut of cars with cars standing further along on the lead track, led to the discovery of the body at the point stated. The standing cars were four gondolas; and they were driven to and along track No. 8 about 100 feet, when they were stopped by cars standing on that track. The distances between the switches connecting tracks Nos. 1 to 8 with the lead track are each 100 feet; the distance between the place where Rice boarded the oil car and the place of collision was about 400 feet; and the effect of the impact was to carry all the cars some 200 feet further. However, the grade ascended as far as track No. 6 and descended thence to the place where the cars were stopped, though neither the percentage of ascent or descent is given.

On the morning following the injury, two inspectors of the company found the set screw which fastens the ratchet wheel to the brake staff of the box car loose, so that the brake could not be set to stay. This was at the end of the box car which adjoined the brake staff end of the oil car. It was also found that the knuckle of the lock of the coupler at the opposite end of the box car was bent. The remaining necessary facts appear in the opinion.

C. A. Seiders, of Toledo, Ohio, for plaintiff in error.

C. A. Thatcher, of Toledo, Ohio (G. B. Keppel, of Toledo, Ohio, of counsel), for defendant in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

WARRINGTON, Circuit Judge (after stating the facts as above). The first assignment of error is based upon the denial of a motion made at the close of all the evidence, without specifying any distinct ground, to direct a verdict for the company.

1. Any consideration of the facts contained in the statement will show that the decedent, the fieldman, was confronted at night, in the yard of the company, with the duty of boarding one of two moving cars for the purpose of preventing them from colliding with cars standing some 400 feet beyond. This duty grew out of a custom so to operate cars in making up trains. The evidence tends to show that the cars were moving at an unusually rapid rate of speed; that, if the brakes of both cars had been in good condition, two such cars moving at a rate of eight to ten miles an hour (and the evidence as a whole does not tend to show they were going that fast) could be stopped in about five car lengths; and that the brake of one of the cars was in such disrepair that it could not be effectively operated. Whatever may be said of the opportunity of decedent, either before or at the time he boarded the oil car, to estimate the speed of the cars and the feasibility of stopping them (despite their unusual speed) within the distance available, his efficiency and good judgment were attested: (1) By his success in mounting the oil car; and (2) by the proof that the cars could have been controlled if the brake of each had been in order. There is not the slightest evidence that he had any reason to suspect that the brake of either of the cars was out of repair.

However, it is urged that "there is no evidence that Rice was using the defective brake." He was seen operating the brake of the oil car but was not seen alive thereafter. The defective brake of the box car was immediately in front of him when he was setting the brake of the oil car, and his lantern stood close to him on the platform. The record is silent as to his movements between the time of setting the oil car brake and the collision. It is hard to conceive, in view of the distance between the point at which he boarded the car and the location of the standing cars, in connection with the close proximity of the brake on the box car, that there was not time for an experienced brakeman both to set the oil car brake and try to set the other brake. Everything that he was seen to do was in the prompt performance of acknowledged duty. Is it to be said, then, that he failed in so important a matter as at least to try to use the brake of the box car? That was the very next and the last step to be taken in the discharge of his duty; and his own safety as well as that of both the moving and standing cars depended upon his performance of that duty.

[1] It is settled in this court that on the defendant's motion to direct it was the duty of the court to take the most favorable view of the plaintiff's evidence (Erie R. R. v. Weber & Kraft, 207 Fed. 293, decided June 3, 1913; Tennessee Copper Co. v. Nevada Gaddy, 207 Fed. 297, decided on the same day), "and from that evidence, and the inferences reasonably and justifiably to be drawn therefrom, determine whether or not, under the law, a verdict might be found" for the plaintiff (Mt. Adams & E. P. Inclined Ry. Co. v. Lowery, 74 Fed. at page 477, 20 C. C. A. 596, by the present Mr. Justice Lurton; see, also, L. & N. R. R. Co. v. Bell, 206 Fed. 395, decided by this court June 30, 1913).

[2] From the facts just pointed out and the most natural and reasonable inference deducible therefrom, it was entirely justifiable to

·conclude that Rice continued in the performance of his duty respecting the brake on the box car between the time he was seen setting the opposite brake and the collision. As was said in Maguire v. Fitchburg Railroad, 146 Mass. 379, 15 N. E. 904, respecting the evidential effect of finding a deceased employé's body at a place where his duty had called him:

"The jury might well have believed that he was on the track in the performance of his duty and in the exercise of all the care to be expected of a prudent man."

See, also, Caron v. Boston & Albany Railroad, 164 Mass. 523, 525, 526, 42 N. E. 112.

This is in principle like the presumption of performance of duty, which, in the absence of evidence to the contrary, is indulged in favor of one who is injured at a railroad crossing; that is, that he stopped, looked, and listened before attempting to cross. Baltimore & Potomac R. R. v. Landrigan, 191 U. S. 461, 472, 474, 24 Sup. Ct. 137, 48 L. Ed. 262; P., C., C. & St. L. Ry. Co. v. Scherer, 205 Fed. 356, decided by this court May 6, 1913; Gates v. Beebe, 170 Mich. 107, 112, 135 N. W. 934. The principle so alluded to is applicable under other and varying circumstances, where there is an absence, as here, of direct testimony on the subject in dispute. Prince v. Lowell Electric Light Corp., 201 Mass. 276, 281, 87 N. E. 558; Brown v. Coal Co., 143 Iowa, 662, 673, 120 N. W. 732, 28 L. R. A. (N. S.) 1260; Gilbert v. Ann Arbor R. Co., 161 Mich. 73, 79, 125 N. W. 745. It follows that the motion to direct was rightly overruled.

[3] 2. Although the defense of assumption of risk is not set up in the answer, it appears to have been considered in the trial court, and it has been strenuously pressed upon our attention. We infer that counsel was permitted to present this defense at the trial, under two requests which were refused and upon which error is assigned. In one of these requests the court was asked to instruct the jury that a verdict could not be rendered on account of a defective brake, because there was "no evidence that Rice was using the defective brake"; and in the other that the verdict must be for the defendant "if the evidence shows that it was customary to kick cars at that place at a speed as great or greater than was used at the time of this accident." Thus it was sought to have the cars treated as having been in all respects in good repair and as running at a speed not unusual; and so it was claimed that, under the custom of the yard, Rice assumed the risk attending the movement and stoppage of these particular cars. The general charge upon this subject was as favorable to the company as its receiver could reasonably ask; and the verdict of the jury forbids any claim, indeed none is made, that Rice had any knowledge, either actual or constructive, of the defective brake. The duty to furnish suitable appliances, like brakes, is the duty of the master (Texas & Pacific Railway v. Archibald, 170 U. S. 665, 669, 670, 18 Sup. Ct. 777, 42 L. Ed. 1188; Kreigh v. Westinghouse Co., 214 U. S. 249, 255, 257, 29 Sup. Ct. 619, 53 L. Ed. 984); and since no effort was made by defendant to show that it had used any diligence in the matter of keeping this brake in order, and since, indeed, defendant

seems nowhere to have claimed or presented the theory that there was insufficient proof of its negligence as to this defect, it was not improper for the jury to conclude that the condition of the brake was due to some act or omission of one or more of the agents or employés of the carrier, for which the Employer's Liability Act distinctly renders the carrier liable. Act April 22, 1908, c. 149, 35 Stat. L. pt. 1, p. 65 (U. S. Comp. St. Supp. 1911, p. 1322); Southern Railway Co. v. Gadd, 207 Fed. 277, decided by this court May 6, 1913; Central R. Co. of New Jersey v. Young, 200 Fed. 359, 366, 118 C. C. A. 465 (C. C. A. 3d Cir.). Rice was therefore entitled to assume that the brake on each car was in good condition (Kreigh v. Westinghouse Co., supra, 214 U. S. at pages 255, 256, 29 Sup. Ct. 619, 53 L. Ed. 984; Texas & Pacific Railway v. Archibald, supra, 170 U. S. at page 673, 18 Sup. Ct. 777, 42 L. Ed. 1188; Yazoo & M. V. R. Co. v. Long, 201 Fed. 881, 884 [C. C. A. 6th Cir.]; Alaska Pacific S. S. Co. v. Egan, 202 Fed. 867, 869 [C. C. A. 9th Cir.]); and, considering only familiar principles of the common law (apart from the mooted question as to what extent the doctrine of assumed risk is annulled by the Employer's Liability Act), the danger attendant upon Rice's efforts to control and stop the cars was not one of the risks he assumed under his employment. As the present Chief Justice White said in Texas & Pacific Railway v. Archibald, supra, 170 U. S. at pages 671, 672, 18 Sup. Ct. 779, 42 L. Ed. 1188, respecting a rule of general application and not, we think, dependent upon any statutory requirement:

"The elementary rule is that it is the duty of the employer to furnish appliances free from defects discoverable by the exercise of ordinary care, and that the employé has a right to rely upon this duty being performed, and that, whilst in entering the employment he assumes the ordinary risks incident to the business, he does not assume the risk arising from the neglect of the employer to perform the positive duty owing to the employé with respect to appliances furnished."

See, also, Sterling Paper Co. v. Hamel, 207 Fed. 300, and decisions there cited, decided by this court June 30, 1913.

There is to be added the unusual force employed in kicking the cars and so causing excessive speed in their movement. The effect of such initial force and speed was disclosed by the proved results of the impact of the collision with standing cars, pointed out in the statement; and this is not in any wise affected by the defense of contributory negligence, for, aside from the negative effect of the verdict as respects such negligence, no assignment was made to the court's charge in that behalf. We cannot but conclude, from this and the other matters stated, that the jury was warranted in finding, as its verdict imports, both that the company was negligent and that there was causal relation between its negligence and Rice's death.

[4] 3. The last assignment concerns a discovery made after trial that, between the commencement of the suit and the trial, Rice's widow was married. However, this fact was subsequently called to the attention of the trial judge and also considered on an affidavit upon the motion for new trial; and we think that the question of concealment of marriage addressed itself to the discretion of the court below and so is not reviewable here. ' Big Brushy Coal & Coke Co.

v. Williams, 176 Fed. 529, at page 533, 99 C. C. A. 102, and cases cited (C. C. A. 6th Cir.). The controlling feature of such a question is that the marriage would not have been admissible in mitigation of damages. Davis v. Guarnieri, 45 Ohio St. 470, 15 N. E. 350, 4 Am. St. Rep. 548; Georgia Railroad & Banking Co. v. Garr, 57 Ga. 277, 280, 24 Am. Rep. 492; Consolidated Stone Co. v. Morgan, Adm'r, 160 Ind. 241, 247, 66 N. E. 696; Philpott v. Pennsylvania Ry. Co., 175 Pa. 570, 573, 34 Atl. 856.

It may be noted that while the cause of action arose after the amendment of April 5, 1910, adding section 9 to the Employer's Liability Act (Act April 5, 1910, c. 143, 36 Stat. L. 291 [U. S. Comp. St. Supp. 1911, p. 1325]), and while the court told the jury that the matter of distribution of any recovery belonged to the county probate court, which was contrary to the rule laid down in Gulf, Colorado, etc., Ry. v. McGinnis, 228 U. S. 173, 33 Sup. Ct. 426, 57 L. Ed. 785, yet no allusion to the effect of the amendment or to that decision appears to have been made below, and of course no assignment of error in respect of either is presented here.

The assignments must be overruled, and the judgment of the court below affirmed, with costs.