## BOLTON–PRATT CO. v. CHESTER.

(Circuit Court of Appeals, Sixth Circuit. February 3, 1914.)

No. 2548.

1. MASTER AND SERVANT (§§ 286, 289*)—NEGLIGENCE (§ 136*)—ACTIONS FOR INJURIES—QUESTIONS FOR JURY.

In an employé's action for injuries caused by sacks of cement falling on him from a pile from which shortly before he had taken several sacks, evidence *held* to make questions for the jury as to the employer's negligence in the manner of piling the sacks and in failing to properly inspect the pile to determine its safety, as to the employé's contributory negligence, and, if he was negligent, as to whether his negligence was slight in comparison with that of the employer.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036, 1042, 1044, 1046–1050, 1089, 1090, 1092–1132; Dec. Dig. §§ 286, 289;* Negligence, Cent. Dig. §§ 277–353; Dec. Dig. § 136.*]

2. TRIAL (§ 139*)—MOTIONS FOR PEREMPTORY INSTRUCTION.

A peremptory instruction for defendant is properly refused unless upon a survey of the whole evidence, and giving effect to every inference to be fairly and reasonably drawn therefrom, the case is palpably for defendant.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 332, 333, 338–341, 365; Dec. Dig. § 139.*]

3. PLEADING (§ 406*)—WAIVER OF OBJECTIONS BY ANSWERING AND GOING TO TRIAL.

Where defendant, without objecting to plaintiff's pleadings, answered and went to trial, it waived all objections thereto on the ground of indefiniteness and uncertainty and might not complain of the admission of evidence, though the petition laid the foundation therefor somewhat indefinitely.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1355–1359, 1361–1365, 1367–1374, 1386; Dec. Dig. § 406.*]

4. MASTER AND SERVANT (§ 293*)—INSTRUCTIONS—CONFORMITY TO EVIDENCE.

In an employé's action for injuries caused by sacks of cement falling on him from a pile of such sacks, though plaintiff offered no evidence as

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to defendant's inspection of the pile, where defendant voluntarily did offer such evidence, the court properly charged as to defendant's duty to inspect the pile for the purpose of determining its safety.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1148–1156, 1158–1160; Dec. Dig. § 293.*]

In Error to the District Court of the United States for the Eastern Division of the Northern District of Ohio; William L. Day, Judge.

Action by Joseph Chester against the Bolton-Pratt Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Howell, Roberts & Duncan, of Cleveland, Ohio, for plaintiff in error.

R. B. & A. G. Newcomb, of Cleveland, Ohio, for defendant in error.

Before KNAPPEN and DENISON, Circuit Judges, and SATER, District Judge.

SATER, District Judge. Judgment having been entered for $5,000 on the verdict returned in favor of the defendant in error (hereinafter called the plaintiff), the plaintiff in error (hereinafter called the defendant) prosecuted error to secure its reversal. The case is now for decision.

The case was tried under the act of April 30, 1910 (101 Ohio L. 195), section 6245—1 of which provides that contributory negligence on the part of an employé shall not bar a recovery where his contributory negligence is slight and the negligence of the employer is gross in comparison, but that the damages shall be diminished by the jury in proportion to the amount of negligence attributable to the employé; and that all questions of negligence, contributory negligence, and assumption of risk, shall be for the jury under the instruction of the court.

[1] The disclosures most favorable to the plaintiff appearing on the record are sufficiently stated as follows: The sacks of cement, some of which, weighing 90 pounds each, fell upon and injured the plaintiff, had been piled or corded about two weeks prior to the accident by a servant experienced in work of that character within three to five feet of and parallel with the reinforced concrete building then in process of erection, and, to tie or bind them together to secure them against falling, were, as is usual in such cases, so placed that about the half of each sack of the several layers (except the first) overlapped the sack beneath. As the sacks were not entirely filled with the soft and yielding material, the binding effect was heightened by each overlapping sack fitting over and depressing the one beneath, in which depression the overlying sack rested. When thus properly stacked, the pile is not liable to fall from the removal of sacks, if they be removed, as is customary, layer by layer, beginning at the top, unless its condition has been in some manner so disturbed as to throw it out of plumb. The pile was about 14 feet long, about 4 to 5 feet wide, and from 5 to 8 feet high, and for protection from the weather was covered with tarpaulin or canvas, which, where the ground was level, was weighted

down with bricks. In the basement of the building close to the wall nearest the sacks were a concrete mixer and hoisting engine used to mix and lift the concrete to the upper portions of the building, the operation of which quite noticeably jarred the building and less perceptibly the adjoining ground. The jarring of the ground will cause sacks, placed as those in question were, to settle and the cement to creep or shift towards their ends. The pile will consequently become weakened and liable to fall, if it was originally out of plumb or is put so by the settling, or if the sacks on account of being poorly tied are opened by the increased pressure of the settling cement, thereby permitting it to escape and the pile to incline or shift. About an hour before the accident occurred the defendant's superintendent found the tarpaulin off of one corner of the pile and replaced it. The pile then appeared to be "all right," but he did not test it to determine its condition or to know whether it had shifted or not. It was raining then, and also at the time the plaintiff was injured. The plaintiff, who was a carpenter and as such had been employed by the defendant for about three months in building wooden forms to receive the concrete and was wholly inexperienced in the handling of cement and was given no instructions in that respect by the defendant, was directed by its superintendent to assist the laborers who were engaged in carrying sacks to the workman who was emptying them into the concrete mixer, and also to pile and count empty sacks. Neither he nor his fellow workmen threw back the canvas covering from the north end of the pile from which the removal of the sacks was in progress. After carrying a couple of sacks to the mixer, which was about two feet to the north and four feet distant adjoining the building, he began to count empty sacks which lay between the building and the stack of cement about midway from its ends. While thus engaged, with his back turned toward the corded sacks, a number of them fell upon and bruised him, inflicting a severe, disabling, and permanent injury to his right knee in particular. The defendant's witness Green testified in chief that the plaintiff pulled the sacks which he carried to the mixer from "the bottom line right under the canvas," the effect of which would be to cause the pile to incline and endanger its falling, but on cross-examination he stated that the plaintiff removed the sacks "right off of the pile where they (the other workmen) left off"; i. e., from the top layer of the pile. He further testified that he called to the plaintiff to take the sacks from the top and not from the bottom, but the machinery made a "lot" of noise when running and no one heard any warning given.

The only charges of negligence that need be noticed are: (1) That the defendant did not exercise due care to furnish plaintiff a reasonably safe place in which to work, in that the sacks were not so stacked as to prevent slipping or as to allow for the shifting of the cement in them and of the pile itself; and (2) that the defendant failed duly and properly to inspect the pile to determine its safety.

[2] The contention that the trial court erred in its refusal to direct a verdict on the defendant's motion interposed at the conclusion of all the evidence is not well founded. It was required to withhold a

peremptory instruction to the jury unless upon a survey of the whole evidence, and giving effect to every inference to be fairly and reasonably drawn from it, the case was palpably for the defendant. Travelers' Ins. Co. v. Randolph, 78 Fed. 754, 24 C. C. A. 305 (C. C. A. 6); Worthington v. Elmer, 207 Fed. 306, 125 C. C. A. 50 (C. C. A. 6). There was evidence from which the jury might reasonably conclude that the defendant was negligent as charged in the two respects above mentioned. Although the manner of piling was such as is usual, and the sacks, if properly stacked and not disturbed, were not liable to fall, the effect of the tremor induced during working hours by the operation of the machinery within the building was such as would cause the cement to creep towards their ends and the entire pile to settle and topple over, if it was not originally plumb, or if it was put out of plumb, as it was liable to be, by the creeping and settling processes. The plaintiff's failure to throw back the canvas before removing the sacks, which would have enabled him to see the condition of the pile, might very properly be attributed to his desire to protect it from the falling rain, and to a belief induced by the example of his fellow workmen and the want of instruction that due care for his safety did not require such precautionary act. The court in ruling on the motion was required to take the view, and the jury was at liberty to adopt it, that he removed the sacks from the same portion of the pile and in the same manner as did his fellowworkers, both of whom proceeded in what the defendant's witnesses deem a safe way. It does not appear that the removal of the sacks from the bottom of the pile at its north end, if they were thus removed, endangered its falling at a point near its middle, opposite which the plaintiff was working. There had been no inspection of the pile since it had been erected, unless the superintendent's observation, at the time he placed the covering over its corner to protect it from the falling rain, constituted such; but as the covering reached to the ground where level, and as there is nothing to show on which corner it was replaced, or how much of the pile he observed or could observe, or that he tarried in the rain to determine by an examination its stability or weakness either as an entirety or at the point from which the sacks fell upon the plaintiff, it was for the jury to say, and it might well conclude, that what under the circumstances the superintendent observed could not be fairly entitled an inspection, or that if it should be thus entitled was not such a reasonable and sufficient inspection as, in view of the disturbing influence of the machinery and the hidden condition of the sacks, due care required. Felton v. Bullard, 94 Fed. 781, 37 C. C. A. 1 (C. C. A. 6). Considering the conflicting character of Green's evidence, it was also for the jury and not for the court to say whether the plaintiff took the sacks from the top of the canvas covered pile, as the other workmen did, or from the bottom. A finding that he took them from the top layer would wholly exonerate him from the charge of negligence. If it found that he took them from the bottom, it would still have to determine whether or not the danger resulting from their removal from that place was so obvious to a person inexperienced and uninstructed as the plaintiff was that he could and should have seen

and appreciated the hazard to which he was exposing himself and the liability of the middle portion of the pile to fall, and whether or not, if both were guilty of negligence, his negligence was slight and that of the defendant in comparison was gross. The jury's finding of negligence on the part of the defendant is sufficiently sustained by the evidence. If it found the plaintiff guilty of contributory negligence at all, it necessarily found that his negligence was slight and that of the defendant in comparison was gross. McMyler Mfg. Co. v. Mehnke, 209 Fed. 5, 126 C. C. A. 147 (C. C. A. 6).

[3] Error is assigned to the admission of evidence that the operation of the concrete mixer and hoisting engine caused the building and adjacent ground so to vibrate as to induce the creeping and settlement of the cement and thus to render the sacks liable to fall. The petition lays somewhat indefinitely the foundation for the admission of such evidence, but, as the defendant without objecting to the plaintiff's pleadings answered and went to trial, it waived all objections thereto on the ground of indefiniteness and uncertainty, and may not now complain that the evidence should have been excluded. 6 Ency. Pl. & Pr. 283; Burley v. German-American Bank, 111 U. S. 216, 4 Sup. Ct. 341, 28 L. Ed. 406.

[4] Nor did the court err in charging the jury as to the defendant's duty of inspecting the pile of sacks. Although the plaintiff, on whom rested the burden of proving negligence as regards inspection, offered no evidence touching the same, the defendant voluntarily did so, and it thereby became the court's duty properly to instruct the jury on that subject.

Other errors are assigned, but none of them are well taken or need be considered. We find no error in the record. The judgment of the trial court is affirmed.